[No. A136327. First Dist., Div. Four. Sept. 4, 2015.]

CALIFORNIA SCHOOL BOARDS ASSOCIATION et al., Petitioners and Respondents, v.
STATE BOARD OF EDUCATION, Appellant and Respondent;
ASPIRE PUBLIC SCHOOLS, INC., Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II.B., and II.D.

COUNSEL

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Gregory D. Brown, Deputy State Solicitor General, Karin S. Schwartz, Susan M. Carson and Hadara R. Stanton, Deputy Attorneys General, for Appellant and Respondent.

Procopio, Cory, Hargreaves & Savitch, Gregory V. Moser, Greta A. Proctor; Ricardo J. Soto, Julie A. Umansky and Phillipa L. Altmann for California Charter Schools Association as Amicus Curiae on behalf of Appellant and Respondent and Real Party in Interest.

Laura P. Juran for Petitioner and Respondent California Teachers' Association.

Olson, Hagel & Fishburn, Deborah B. Caplann, Richard C. Miadich and Joshua R. Daniels for Petitioners and Respondents California School Boards Association, Education Legal Alliance, Association of California School Administrators and Stockton Unified School District.

Middleton, Young & Minney, Paul C. Minney, Michael E. Hersher and Andrew G. Minney for Real Party in Interest.

OPINION

**RIVERA, J.**—Section 47605.8 of the Education Code[1] authorizes the State Board of Education to grant (or deny) an application for a "state charter school."[2] Subdivision (a) of the statute directs the board of education to "adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . of the Government Code) for the implementation of this section." The statute further directs that the "[r]egulations adopted pursuant to this section shall ensure that a [state] charter school . . . meets all requirements otherwise imposed on charter schools . . . ." (§ 47605.8, subd. (a).)

It is the reference to "Chapter 5 (commencing with Section 11500)" (chapter 5) in the statute that engenders the question before us on appeal.

Chapter 5, part of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.), governs quasi-judicial proceedings, that is, it prescribes

---

[1] All undesignated statutory references are to the Education Code.

[2] A state charter allows the school to operate without the geographic restrictions imposed by district or county charters. (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1305 [113 Cal.Rptr.3d 550] (*CSBA*); see §§ 47605, subd. (a), 47605.1, 47605.6, subd. (a)(1).)

standards for adjudicatory proceedings undertaken by a governmental agency. (Gov. Code, § 11501, subd. (b).) These include, for example, a written accusation or statement of issues, notice of right to a hearing, testimony under oath, cross-examination, and a written decision. (Gov. Code, §§ 11503, 11504, 11505, 11509, 11511, 11513.)

A different part of the APA, Government Code, title 2, division 3, part 1, chapter 3.5, commencing with section 11340 of the Government Code, governs the rulemaking process of a state agency, that is, it prescribes the "minimum procedural requirements" for adopting substantive regulations to carry out the agency's statutory authority. (Gov. Code, § 11346.) These include, for example, notice to the public and affected business and industry groups of the proposed regulations, opportunity for oral and written presentations by the public and any interested persons or entities, and notice of the date and time of the proceeding at which the proposed regulations will be considered. (Gov. Code, §§ 11346.2–11346.9.)

In this case, the question is whether the reference to the adjudicatory provisions of the APA in section 47605.8 was intentional or erroneous. The State Board of Education (the Board), and amicus curiae California Charter Schools Association contend the reference was a drafting error. They argue that, in directing the Board to "implement" the statute, the Legislature intended to refer to the provisions of the APA governing the rulemaking process. The California School Boards Association and others argue—and the trial court agreed—that the statutory language is plain and can be neither rewritten nor disregarded.

We agree with the Board for three reasons: First, the statute in question governs the approval or denial of a charter school application, which is a quasi-legislative function—requiring consideration of policy questions and the opportunity for public input—and therefore is fundamentally at odds with the adjudicatory procedures mandated by Government Code section 11500 et seq. Second, legislative directives to adopt regulations for the implementation of a statute invariably call for a rulemaking process pursuant to Government Code section 11340 et seq.; the reference to the APA's adjudicatory provisions in section 47605.8 is therefore a complete anomaly. Third, the use of an adjudicatory proceeding to approve or deny state charters pursuant to section 47605.8 would be inconsistent with all other like provisions in the Charter Schools Act of 1992 (§ 47600 et seq.), none of which entails quasi-judicial proceedings.

Accordingly, we reverse the judgment and remand the matter for further proceedings.

## I. PROCEDURAL BACKGROUND[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. ANALYSIS

A. *The Statute*

For clarity in the published portion of the opinion, we restate here the relevant provisions of section 47605.8: "(a) A petition for the operation of a state charter school may be submitted directly to the state board, and the state board shall have the authority to approve a charter for the operation of a state charter school that may operate at multiple sites throughout the state. The State Board of Education shall adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code) for the implementation of this section. Regulations adopted pursuant to this section shall ensure that a charter school approved pursuant to this section meets all requirements otherwise imposed on charter schools pursuant to this part, except that a state charter school approved pursuant to this section shall not be subject to the geographic and site limitations otherwise imposed on charter schools. . . . [¶] (b) The state board shall not approve a petition for the operation of a state charter school pursuant to this section unless the state board makes a finding, based on substantial evidence, that the proposed state charter school will provide instructional services of statewide benefit that cannot be provided by a charter school operating in only one school district, or only in one county. The finding of the state board in this regard shall be made part of the public record of the proceedings of the state board and shall precede the approval of the charter. [¶] . . . [¶] (d) The state board shall not be required to approve a petition for the operation of a state charter school, and may deny approval based on any of the reasons set forth in subdivision (b) of Section 47605.6."

B. *Is Petitioners' APA Claim Outside the Pleadings?*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *The Merits of Petitioners' APA Claim*

As we have stated, the question posed is whether the reference to Government Code section 11500 et seq. in the statute was intended by the Legislature or was a scrivener's error.

---

[*]See footnote, *ante*, page 838.

### 1. *The Plain Language of the Provision*

Petitioners' first-line argument is that the statute means what it says, and its plain meaning cannot be rewritten or ignored by the courts. We, however, disagree with petitioners' interpretation of the "plain meaning" of the statute.

■ Section 47605.8, subdivision (a), provides that the Board "shall adopt regulations, *pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . of the Government Code)* for the implementation of this section." (Italics added.) Taken literally, these words mean that the Board must adopt regulations using the adjudicatory procedures of the APA. As the Board has argued, this makes no sense. An agency does not—and cannot—promulgate administrative regulations using an evidentiary hearing process. Regulations must be adopted under the rulemaking procedures of the APA. (Gov. Code, § 11346.)

■ Petitioners argue, however, that the statute should be read to mean that the Board must adopt regulations pursuant to the rulemaking process, but the content of the regulations must be quasi-judicial. This interpretation is clearly at odds with the meaning of the phrase "adopt regulations pursuant to the Administrative Procedure Act" utilized in virtually every other statute—a phrase which describes not the content of the regulations, but the process for their adoption. (See pt. II.B.4., *post.*) But even if the statute could be so construed, we conclude this was not what the Legislature intended for the reasons we discuss.

### 2. *The Approval of a Charter for a School Is a Quasi-legislative Function*

Petitioners argue that the Legislature intended the approval of a state charter (as distinct from local charters) to be a quasi-judicial act, this by virtue of (1) the reference to Government Code section 11500 et seq. in Education Code section 47605.8, and (2) the requirements in the statute that the Board's decision be supported by "findings," based on "substantial evidence," which must be included in the public record of the Board's proceedings. Petitioners say these factors are "highly suggestive" of a quasi-judicial determination. And, petitioners conclude, because a quasi-judicial determination is one which "involves the application of the general statutory criteria to a specific applicant, as well as a required showing of factual support for [the Board's] ultimate determination," the approval or denial of a state charter application is a quasi-judicial exercise.

Petitioners' theory does not persuade us, as it rests on a superficial reading of the statute and ignores both the statutory context and large swaths of precedent.

■ We begin with the established principle that the creation and alteration of municipalities and local districts are fundamentally legislative functions. (See, e.g., *City of Santa Cruz v. Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 387 [142 Cal.Rptr. 873] (*City of Santa Cruz*) ["It has long been held that when a local agency determines the boundaries of a city or whether territory should be annexed to such an entity, it is acting in a quasi-legislative capacity." (italics omitted)]; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495 [87 Cal.Rptr.2d 702, 981 P.2d 543] [decision whether to approve the annexation of land by city is quasi-legislative]; *Wilson v. Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 278 [63 Cal.Rptr. 889] (*Wilson*) [decision whether to exclude a petitioner's property from a water district and allow it to be annexed to a different water district was a quasi-legislative act].)

Since the late 19th century, the creation of or alteration to a school district has been recognized as a legislative or quasi-legislative act. "The power to change the boundaries of the [school] district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the legislature or mediately by a board of supervisors—the local legislature—is, whenever exercised, a legislative act." (*Hughes v. Ewing* (1892) 93 Cal. 414, 417 [28 P. 1067]; accord, *Antelope Val. U. H. S. Dist. v. McClellan* (1921) 55 Cal.App. 244, 247 [203 P. 147]; see *Worthington S. Dist. v. Eureka S. Dist.* (1916) 173 Cal. 154, 156 [159 P. 437] [the Legislature holds plenary power over school districts, and it may delegate to boards of supervisors, under certain conditions, powers of annexation]; *Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 786, fn. 3 [187 Cal.Rptr. 398, 654 P.2d 168] (plur. opn. of Broussard, J.), disapproved on another ground in *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 917–922 [13 Cal.Rptr.2d 245, 838 P.2d 1198] ["Subject only to constitutional limitations, the Legislature has plenary power over the formation, dissolution or change of boundaries of school districts."]; *City of South Gate v. Los Angeles Unified School Dist.* (1986) 184 Cal.App.3d 1416, 1421 [229 Cal.Rptr. 568] [district's boundary adjustment between high schools was quasi-legislative].)

A charter school is "deemed to be a 'school district'" for purposes of statutory and constitutional funding allocations. (§ 47612, subd. (c).) Consequently, the approval of a charter creates a school district and, like the creation of any other district, is a quasi-legislative act.

But we do not rest on this analysis alone. We reach the same result when we approach the issue from a broader perspective.

### 3. Quasi-legislative Versus Quasi-judicial Acts

■ "The courts in the past have devised several general formulations to assist them in differentiating quasi-judicial from quasi-legislative action. One such formulation is as follows: 'The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it.' [Citations.] Another is that the one determines individual rights, while the other involves the exercise of a discretion governed by considerations of the public welfare. [Citation.] While such formulations may be helpful, they do not provide an answer in every case. The basic inquiry, in our opinion, must be into the nature of the *function* performed. [Citation.]" (*Wilson, supra*, 256 Cal.App.2d at pp. 279–280; see *Joint Council of Interns & Residents v. Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1209–1210 [258 Cal.Rptr. 762] (*Joint Council*) ["At bottom 'the distinction between the quasi-legislative and quasi-judicial decision contemplates the function performed rather than the area of performance . . . .' "].)

As explained in *Wilson*, the hallmark of a quasi-legislative decision is that the agency's determination is informed by public policy, that is, how the decision will affect the interests of the community. In *Wilson*, a property owner petitioned the water district to exclude her land from the district and allow it to be annexed to another district. "In passing upon the two petitions the . . . District was not hearing them as a disinterested tribunal deciding merely the question of whether the lands directly and immediately affected . . . [should] be excluded from the District or permitted to be annexed by other local public entities. The board hearing these petitions was the governing board of the District. [Citation.] As such, its dominant concern had to be the effect its actions would have not merely upon the interests of those owning or living upon the land immediately affected by the petitions, but also upon the interests of the people owning or living upon the land within the remainder of the District." (*Wilson, supra*, 256 Cal.App.2d at p. 280, fn. omitted; see *City of Santa Cruz, supra*, 76 Cal.App.3d at p. 389 [quoting *Wilson*, a quasi-legislative action " 'involves the exercise of a discretion governed by considerations of the public welfare' "]; *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 276–277 [32 Cal.Rptr.2d 807, 878 P.2d 566] [a decision that involves consideration of factors beyond the mere application of existing rules to existing facts is quasi-legislative].)

Here, the exercise of discretion by the Board in creating—or not creating—a state charter school involves consideration of interests beyond those of just the applicant. Indeed, in a different context, petitioners argued as much: "The approval of a new statewide charter petition potentially impacts the funding and facilities decisions of the local districts in which the charter

schools will be located. . . . [¶] . . . [S]tatewide charters permit the holder to operate campuses in multiple school districts throughout the state, free from local district governing board oversight. These facts place a premium on public participation in the original review and consideration of the petition, as this may be the only public opportunity to address concerns or request that certain conditions be met before approval."

Thus, according to petitioners, a decision to approve or deny a state charter should not be limited to a simple application of the law to the facts contained in the charter petition, but should include consideration of the charter's effects on local school districts and should take into account public concerns regarding the proposed charter and its conditions of approval. This is a quintessentially quasi-legislative action using " 'the exercise of a discretion governed by considerations of the public welfare.' " (*City of Santa Cruz, supra*, 76 Cal.App.3d at p. 389.) And, the public airing of views that is part and parcel of the Board's quasi-legislative determination cannot occur in an adjudicatory process contemplated by Government Code section 11500 et seq., which, although open to public view (Gov. Code, § 11425.20, subd. (a)), is not open to public comment or participation. (See Gov. Code, §§ 11125.7, subd. (f), 11513, subd. (b).)[7]

Petitioners nevertheless maintain that the statute's directives—requiring the Board to make a "finding" based on "substantial evidence" and requiring this finding to be made part of the "public record" of the Board's "proceedings"—support the proposition that the Legislature intended the Board's process to be an adjudicatory one. They argue, "[e]ach of the requirements described above are highly suggestive of a quasi-judicial determination, i.e., a determination that 'involve[s] the application of rules to specific facts and specific individuals.' [Citation.]"

■ This argument ignores well-settled precedent holding that it is the *function* and not the process that determines whether an action is judicial or legislative in nature. (*20th Century Ins. Co. v. Garamendi, supra*, 8 Cal.4th at pp. 275–276.) *Wilson* provides an early example of this principle.

In *Wilson*, the court held that the water district's action in denying a request to remove land from the district was quasi-legislative despite the fact

---

[7] Petitioners posit that the Board could avoid the downside of an adjudicatory process—i.e., exclusion of interested parties, such as petitioners and the public, from participation in the hearing—by adopting regulations that would (1) characterize affected school districts as "parties" to the proceeding, (2) allow other interested persons to be interveners, (3) allow nonparties with relevant information to participate as witnesses, (4) allow public input before a final decision is made, and (5) commit the Board to deliberate on the decision in a public forum, instead of in closed session. Petitioners by this argument seek the procedural protections of a quasi-judicial process while maintaining the transparency and public participation of a quasi-legislative process, but offer no legal support for such a hybrid.

that the decision involved hearings and factfinding. The court's explanation is instructive. "[T]he presence of certain elements usually characteristic of the judicial process [does not] mean that the board's action was quasi-judicial. In this case the . . . District, in denying petitioners' requests . . . acted in response to specific petitions, with regard to specific parties and after hearing evidence. In these respects the decisions made by the board and the procedure used in arriving at its decision embodied characteristics of the judicial process. [¶] But these characteristics of the proceedings are not alien to the legislative process. Legislative bodies often act in response to specific petitions and with regard to specific parties. [Citations.] Furthermore, the hearing process is not confined to the courts. The Legislature and administrators exercising quasi-legislative powers commonly resort to the hearing procedure to uncover, at [least] in part, the facts necessary to arrive at a sound and fair legislative decision. [Citations.] Hence the presence of certain characteristics common to the judicial process does not change the basically quasi-legislative nature of the subject proceedings." (*Wilson, supra,* 256 Cal.App.2d at p. 279, fn. omitted; see *City of Santa Cruz, supra,* 76 Cal.App.3d at pp. 387–388 [fact that the commission holds public hearings and considers testimony to ascertain facts does not change quasi-legislative nature of action setting municipal boundaries].)

The same is true where a "finding" is required. "[T]he fact that [a statute] required the Board [of Supervisors] to make a 'finding' of cost-effectiveness or feasibility is of no import under the circumstances presented here. Although the statutory obligation to make a 'finding' is a characteristic shared with adjudicatory proceedings, it does not stamp the function with an adjudicative character. [Citation.]" (*Joint Council, supra,* 210 Cal.App.3d at p. 1212.)

Nor does the additional requirement that the Board's finding be supported by "substantial evidence" (§ 47605.8, subd. (b)) change the analysis. It is not uncommon for this kind of statutory gloss to be applied to the review of quasi-legislative actions. (See, e.g., Pub. Resources Code, § 21168.5 [in reviewing an agency's action for compliance with the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.), "the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence"]; *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 568 [38 Cal.Rptr.2d 139, 888 P.2d 1268] [Pub. Resources Code, § 21168.5 applies to quasi-legislative actions].)

Finally, the statute's requirement that the finding be made part of the "public record of the proceedings of the state board" (§ 47605.8, subd. (b))

simply echoes the provisions of the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.), which prescribes that all state bodies provide public notice of their meetings, publish their agendas, and hold open and public meetings. (Gov. Code, §§ 11123, 11125, 11125.1.) "[I]t is the intent of the law that actions of state agencies be taken openly and that their deliberation be conducted openly." (Gov. Code, § 11120.) **(7)** Read in this context, the statute's requirement that the Board's finding be made part of the public record is not "highly suggestive of a quasi-judicial determination." (See *California Radioactive Materials Management Forum v. Department of Health Services* (1993) 15 Cal.App.4th 841, 858 [19 Cal.Rptr.2d 357] [specification in statute that there be a " 'hearing on the record' " is not a term of art referring only to quasi-judicial hearings], disapproved on another ground in *Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 305, fn. 5 [105 Cal.Rptr.2d 636, 20 P.3d 533].)

In sum, we find no support in the law for petitioners' position that the Board's decisionmaking process on a state charter application is a quasi-judicial rather than quasi-legislative function.

### 4. *Petitioners' Interpretation of the Statute Cannot Be Reconciled with Statutory Schemes*

Our conclusion that the Legislature intended to refer to the rulemaking rather than the adjudicatory provisions of the APA in section 47605.8 is also buttressed by the statute's language and context.

While the Legislature has the power to require an agency to conduct adjudicatory proceedings in accordance with Government Code section 11500 et seq., and has done so in scores of statutes, it is extremely doubtful it meant to do so here because the plain language of Education Code section 47605.8 shows no such intent.

In virtually every statute requiring a state agency to conduct adjudicatory proceedings under chapter 5, the Legislature directs the agency to conduct "proceedings" or "hearings" or "appeals" "in accordance with" or "pursuant to" Government Code section 11500 et seq.[8] No such language was included in section 47605.8.

---

[8] Examples: "[The [or] all] hearings . . . shall be conducted in accordance with the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . ." (Ins. Code, §§ 10753.18.5, 10755.18.5; see Ed. Code, § 8403); "[the [or] all] proceedings . . . shall be conducted in accordance with [Government Code section 11500 et seq.]" (Rev. & Tax. Code, § 671; Bus. & Prof. Code, § 3092); "[the [or] any] hearing shall be held in accordance with [Government Code section 11500 et seq.]" (Health & Saf. Code, § 128775, subd. (b); Fin. Code, § 12105); "[an appeals panel] shall consider audit appeals pursuant to the administrative adjudication provisions of [the Government Code]" (Ed. Code, § 41344.1).

Conversely, when the Legislature is authorizing or mandating an agency to adopt regulations to implement the provisions of a statute or statutory scheme, it uses language directing a rulemaking process, e.g., "[t]he department shall adopt regulations pursuant to the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) . . .) to implement this chapter. . . ." (Pen. Code, § 1174.8.)[9]

Section 47605.8, however, provides, "[t]he State Board of Education shall adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . of the Government Code) for the implementation of this section." The reference to chapter 5 is thus completely at odds with every other statute in which the Legislature directs the adoption of regulations to implement the law.

That this was done in error is not only possible, but has happened before. In 1995, when the APA was amended to add the provisions contained in the current version of Government Code, title 2, division 3, part 1, chapter 4.5, it also made "technical, nonsubstantive changes" to various statutes, including former section 232 (now § 221.1, as amended and renumbered by Stats. 1998, ch. 914, § 25, p. 6096) of the Education Code. (Legis. Counsel's Dig., Sen. Bill No. 523, 5 Stats. 1995 (1995–1996 Reg. Sess.) Summary Dig., p. 405.) That statute had provided, "[t]he State Board . . . shall issue regulations pursuant to Chapter 3.5 (commencing with Section 11340) *and Chapter 5 (commencing with Section 11500)* of Division 3 of Title 2 of the Government Code, commonly referred to as the Administrative Procedure Act, to implement the provisions of this chapter." (Stats. 1987, ch. 118, § 1, p. 403, italics added.) The 1995 "cleanup" bill removed the clearly erroneous reference to section 11500 et seq. (Stats. 1995, ch. 938, § 5, p. 7106.)

We observe, additionally, that section 5096.2 of the Business and Professions Code contains the same error, but in reverse. There, the rulemaking provisions of the APA are cited several times in connection with provisions clearly directing an adjudicatory process. For example, it provides: "The provisions of the Administrative Procedure Act *(Chapter 3.5 (commencing with Section 11340)* of Part 1 of Division 3 of Title 2 of the Government

---

[9] Additional examples: "The department [[*or*] administrator] shall [[*or*] may] adopt regulations to implement this chapter [[*or*] act] in accordance with [Government Code section 11340 et seq.]" (Welf. & Inst. Code, §§ 9745, 10077; Gov. Code, § 8670.7.5); "[t]he board may adopt regulations relating to the administration and enforcement of this part pursuant to [Government Code section 11340 et seq.]" (Rev. & Tax. Code, § 46001.5); "[t]he department shall adopt rules and regulations for the implementation of this division. [¶] . . . Rules and regulations . . . shall be adopted in accordance with [Government Code section 11340 et seq.]" (Pub. Resources Code, § 10240); "[t]he board shall adopt regulations in accordance with [Government Code section 11340 et seq.] to establish policies, guidelines, and procedures to implement this article" (Bus. & Prof. Code, § 4127).

Code), including, but not limited to, the commencement of a disciplinary proceeding by the *filing of an accusation* by the board, shall apply under this article." (Bus. & Prof. Code, § 5096.2, subd. (f), italics added.)[10]

While we have not canvassed all 360-odd volumes of the annotated codes, our focused search revealed no other statute that makes reference to the adjudicatory provisions of the APA in conjunction with a directive to adopt regulations to "implement" legislation. This leads us to conclude that the reference was not intended by the Legislature but was the result of a drafting error.[11]

██ Applying a narrower lens, we similarly conclude that a literal reading of the statute would be inconsistent with the statutory scheme of the Charter Schools Act of 1992 (the Act) (§ 47600 et seq.). Pursuant to the Act, a charter school can be created in one of five ways: By application to a school district (§ 47605), by application for a county charter to a county board of education (§§ 47605.5, 47605.6), by appeal of a denial by a school district to a county

---

[10] The error pervades the statute. It also provides: "(b) The board may revoke practice privileges using either of the following procedures: [¶] (1) Notifying the individual in writing of all of the following: [¶] (A) That the practice privilege is revoked. [¶] (B) The reasons for revocation. [¶] (C) The earliest date on which the individual may qualify for a practice privilege. [¶] (D) That the individual has a right to appeal the notice and request a hearing under the provisions of the Administrative Procedure Act (*Chapter 3.5 (commencing with Section 11340)* of Part 1 of Division 3 of Title 2 of the Government Code) if a written notice of appeal and request for hearing is made within 60 days. [¶] . . . [¶] (2) Filing a statement of issues under the Administrative Procedure Act (*Chapter 3.5 (commencing with Section 11340)* of Part 1 of Division 3 of Title 2 of the Government Code)." (Bus. & Prof. Code, § 5096.2, italics added.)

[11] At oral argument petitioners cited Government Code section 12781 as an example of a statute that requires the promulgation of regulations "that are necessary and appropriate for the effective administration of this chapter," *pursuant to* Government Code, title 2, division 3, part 1, chapter 3.5, chapter 4, *and* chapter 5, part of the APA, and thus contended the phrase "promulgation of regulations pursuant to the [APA]" refers to the adjudicatory as well as rulemaking provisions of the APA. We observe, however, that the statute is unusual, and possibly unique in that it spells out the agency's duty to adopt both quasi-legislative rules and quasi-judicial procedures to govern the standards to be applied and the process to be followed with respect to grant applications for community services block grants. For example, the regulations are required, at minimum, to define (1) the due process rights of eligible entities and the procedures to guarantee those rights; (2) the obligation of eligible entities to provide a fair procedure for clients who are denied services; and (3) the requirement that community agencies select tripartite boards that include persons who represent the poor; the regulations must also ensure operative democratic procedures which may include criteria for tenure, geographic representation, and elections. (Gov. Code, § 12781, subd. (d).) The statute thus specifically calls for both substantive regulations and adjudicatory procedures. Section 47605.8, in contrast, directs the Board to adopt regulations "for the implementation of this section," and to "ensure that a charter school approved pursuant to this section meets all requirements otherwise imposed on charter schools . . . ." By its terms, the statute directs only the adoption of substantive regulations; it does not direct the adoption of regulations defining "due process rights," "[fair procedures] to guarantee those rights," or any other similar adjudicatory rules.

board of education (§ 47605, subd. (j)(1)), by appeal of a denial by a county board to the Board (*ibid.*), or by application for a state charter to the Board (§ 47605.8). In each instance, the Act requires that the charter application meet all of the statutory requirements found in section 47605, subdivisions (a) and (b). (§§ 47605, subd. (j)(1), 47605.8, subd. (a).) Findings are required for the denial of a local charter and for the approval of a state or county charter (§§ 47605, subds. (b) & (j)(1), 47605.8, subd. (b), 47605.6, subd. (a)(1)), but only section 47605.8 cites to chapter 5.

It is not disputed that all decisions on *local* charter school applications at every level—district, county and Board—are quasi-legislative actions, but petitioners urge us to treat the Board's decision on a state charter school application as an action fundamentally different in nature. Petitioners theorize that the Legislature intended to create an adjudicatory process only for state charter school applications because they are disfavored as compared to local charters. That is, the Board must *deny* a statewide charter application unless it makes certain findings (§ 47605.8, subd. (b)), while a school district must *grant* a charter application unless it makes certain findings (§ 47605, subd. (b)). According to petitioners, this "mirror image" presumption in favor of local charters and against state charters supports the notion that the Legislature intended to impose on the Board a more procedurally rigorous factfinding requirement for state charters. This, of course, is pure speculation. Reading the Act as a whole, one could speculate that the opposite conclusion is equally plausible, because the factfinding required before a school district can deny a charter school application is far more detailed and rigorous than the general finding required to be made by the Board before approving a state charter. (Compare § 47605, subd. (b)(1)–(5) with § 47605.8, subd. (b).) Additionally, the same presumption applies to county charters (§ 47605.6, subd. (a)(1)), yet petitioners do not contend an action on a county charter is or should be quasi-judicial. Thus, petitioners' hypothesis, that the Legislature intended *state* charter school applications—but no other charter applications—to be determined by an adjudicatory process, finds no support in the Act.

### 5. *Summary*

■ The Legislature adopted section 47605.8 to authorize the approval (or denial) of a petition for a state charter school, and directed the Board to "adopt regulations . . . for the implementation of [section 47605.8]" and to ensure that a state charter school "meets all requirements otherwise imposed on charter schools . . . ." (§ 47605.8, subd. (a).) We have concluded that the approval (or denial) of a state charter petition is a quasi-legislative function. We have further concluded that the adoption of regulations for the "implementation" of a statute is governed by the rulemaking provisions of the APA. These principles lead inexorably to the conclusion that petitioners' "literal" reading of

the reference to Government Code section 11500 et seq. contained in Education Code section 47605.8 as requiring the adoption of *adjudicatory* procedures for state charter petitions would produce an anomalous and absurd result. (See *In re J.W.* (2002) 29 Cal.4th 200, 210 [126 Cal.Rptr.2d 897, 57 P.3d 363] ██ ["[C]ourts will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended."].)

██ We therefore disagree with the trial court's conclusion that the reference to chapter 5 in section 47605.8 must be given effect because the language is "unambiguous and specific." As the United States Supreme Court very recently stated, "when deciding whether the [statutory] language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.' [Citation.] Our duty, after all, is 'to construe statutes, not isolated provisions.' [Citation.]" (*King v. Burwell* (2015) 576 U.S. ___, ___ [192 L.Ed.2d 483, 135 S.Ct. 2480, 2483].)

D.  *Propriety of Board's Current Policies and Procedures**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.  DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings consistent with this opinion.

Ruvolo, P. J., and Reardon, J., concurred.

On September 4, 2015, and September 25, 2015, the opinion was modified to read as printed above.

---

* See footnote, *ante*, page 838.